# UNITED STATES COURT OF APPEALS
# FOR THE DISTRICT OF COLUMBIA CIRCUIT

| | |
|---|---|
| COALITION FOR RENEWABLE NATURAL GAS, | ) ) ) |
| *Petitioner*, | ) ) ) |
| v. | ) ) ) |
| | ) No. 25-1183 |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | ) ) ) |
| *Respondent*. | ) ) ) |

## MOTION OF AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS FOR LEAVE TO INTERVENE IN SUPPORT OF RESPONDENT

Pursuant to Federal Rules of Appellate Procedure 15(d) and 27, as well as Circuit Rules 15(b) and 27, American Fuel & Petrochemical Manufacturers ("AFPM") respectfully moves for leave to intervene in Case No. 25-1183 in support of Respondent U.S. Environmental Protection Agency ("EPA"). These petitions concern EPA's final agency action entitled "Renewable Fuel Standard (RFS) Program: Partial Waiver of the 2024 Cellulosic Biofuel Volume Requirement," 90 Fed. Reg. 29751 (Jul. 7, 2025) ("2024 Partial Waiver").[1]

---

[1] AFPM's petition for review of the same rule (No. 25-1184) has been consolidated with lead case No. 25-1183 (*See* Doc. #2133882 (Sept. 8, 2025)).

This motion is timely because it is filed within 30 days of Petitioner Coalition for Renewable Natural Gas's filing of its petition for review. Fed. R. App. P. 15(d); Cir. R. 15(b). Counsel for AFPM is authorized to state that Petitioner Coalition for Renewable Natural Gas ("RNG Coalition") does not oppose this motion and that Respondent EPA takes no position on this motion.

## BACKGROUND

AFPM is a trade association representing most of the refining and petrochemical manufacturing capacity of the United States. AFPM's members produce the vast majority of the U.S. supply of gasoline, diesel, jet fuel, other fuels and home heating oil, as well as the petrochemicals used as building blocks for thousands of essential products in daily life. To protect its members' interests, AFPM actively participates in Clean Air Act administrative proceedings that affect its members, along with litigation, like this case, that arises from those proceedings. AFPM members are obligated parties under the Renewable Fuel Standard and are directly regulated by annual Renewable Fuel Standards. The partial waiver of 2024 cellulosic biofuel requirements directly affects the compliance levels required from AFPM members by decreasing the amount of cellulosic biofuel they must purchase and blend into gasoline or diesel and/or by reducing the number of Renewable

Identification Numbers ("RINs") that they must purchase for compliance with Renewable Fuel Standards.[2]

## I.     The Renewable Fuel Standard Program

In the Energy Policy Act of 2005, Pub. L. No. 109-58, 119 Stat. 594, Congress amended section 211 of the CAA to establish the Renewable Fuel Standard ("RFS") program. Congress expanded the RFS program in 2007. *See* Energy Independence and Security Act of 2007, Pub. L. No. 110-140, 121 Stat. 1492.  For calendar years after 2022, section 211(*o*)(2)(B)(ii) of the RFS directs EPA to determine the applicable volumes of renewable fuel, advanced biofuel, cellulosic biofuel, and biomass-based diesel for each calendar year based on a review of the RFS implementation and multiple statutory criteria. 42 U.S.C. § 7545(*o*)(2)(B)(ii). EPA is to determine these volumes "no later than 14 months before the first year for which such applicable volume will apply." *Id.*

For any calendar year in which EPA promulgates applicable volumes for cellulosic biofuel, EPA is directed to waive those volumes one month before the start of that year if "the projected volume of cellulosic biofuel production is less than the minimum applicable volume" that EPA has established for that year. 42 U.S.C. § 7545(*o*)(7)(D)(i). EPA is required to "reduce the applicable volume of cellulosic

---

[2] RINs are unique numbers "generated to represent a volume of renewable fuel[.]" 40 C.F.R. §§ 80.2, 80.1401.

biofuel required … to the projected volume available during that calendar year." *Id*.
EPA promulgated the 2024 Partial Waiver under this authority. 90 Fed. Reg. 29752
(July 7, 2025).

AFPM members are obligated parties required to demonstrate compliance
with a specific volume—the annual "renewable volume obligation"—for cellulosic
biofuel. 42 U.S.C. § 7545(*o*)(3)(B)(ii)(I); 40 C.F.R. § 80.1406(b). The renewable
volume obligation is calculated by multiplying the volume of non-renewable
gasoline and diesel that the obligated party produces or imports in a calendar year,
by the applicable renewable fuel standard that EPA publishes for that year. 42 U.S.C.
§ 7545(*o*)(3)(B)(i); 40 C.F.R. § 80.1407. AFPM members face substantial penalties
if they fail to demonstrate compliance with their annual renewable volume
obligations. *See* 42 U.S.C. § 7545(d)(1), (*o*)(3)(B)(ii); 40 C.F.R. § 80.1463.

AFPM members demonstrate compliance with their renewable volume
obligations by "retiring" enough RINs to satisfy volumes measured in gallons, based
on equations for calculating a party's renewable volume obligations for cellulosic
biofuel. *See* 40 C.F.R. § 80.1427(a)(1)(i). While RINs are generated through the
production of cellulosic biofuel, they may be used for compliance or transferred to
another party only after being separated from the fuel. Separation of RINs can occur
only under defined circumstances, when renewable fuel is owned by an obligated

party, blended into gasoline or diesel, or exported. *See* 42 U.S.C. § 7545(*o*)(2)(A)(ii)(II)(cc), (iii)(II)(bb); 40 C.F.R. § 80.1429.

Obligated parties can also fulfill their cellulosic biofuel obligations by purchasing cellulosic waiver biofuel credits. 40 C.F.R. § 80.1456. These credits, however, are only available for purchase when EPA reduces the applicable volume of cellulosic biofuel for "any given compliance year" through the cellulosic biofuel waiver. *Id.* § 80.1456(a).  Cellulosic biofuel credits can only be applied towards an obligated party's current year cellulosic biofuel renewable volume obligation and cannot be used to satisfy other RFS obligations. *Id*. § 80.1456(b)(4).

## II.    The Challenged Action

The 2024 Partial Waiver lowered the 2024 cellulosic biofuel volume requirement by 80 million RINs. 90 Fed. Reg. at 29755. EPA stated that '[t]his volume requirement matches the actual cellulosic RIN generation for 2024 of 1.01 billion RINs." *Id.* Correspondingly, EPA reduced the cellulosic biofuel percentage standard for 2024 (which is used to calculate the renewable fuel obligations of AFPM members) to 0.59 percent from 0.63 percent. *Id.* at 29757.  This in turn reduced the number of cellulosic biofuel RINs that AFPM members are required to obtain and "retire[] for compliance" and/or "[t]he total cellulosic biofuel waiver credits used to meet the party's cellulosic biofuel [renewable fuel obligation]." 40 C.F.R. § 80.1451(a)(1)(viii), (x); *see also id.* § 80.1407(a)(1)(i).

5

While Petitioners have not yet filed issue statements for these consolidated actions, AFPM expects that Petitioner RNG Coalition may challenge EPA's decision to waive cellulosic biofuel standards for 2024 and allow for the use of cellulosic biofuel credits for compliance with such standards.[3] Anticipating these challenges, AFPM seeks to intervene in support of EPA.

## ARGUMENT

AFPM has a significant, direct interest in this litigation to protect its members' operations; in fact, AFPM has filed a petition for review of the 2024 Partial Waiver to protect its interests. *See* n.1, *supra*. AFPM members are directly regulated as obligated parties under the RFS, and the 2024 Partial Waiver altered their compliance obligations for cellulosic biofuel. Thus, they have standing to intervene in this litigation. The existing parties do not adequately represent AFPM's interests in this case and AFPM members may be harmed by a favorable ruling for Petitioners. The Court should grant AFPM's motion for leave to intervene as a respondent in this case because AFPM meets the standard for intervention in petition-for-review proceedings in this Court.

---

[3] Because Petitioners' issue statements are not yet due, and because Petitioners may also press arguments that they did not advance in their own comments, as long as they were fairly presented during the comment period, *see* 42 U.S.C. § 7607(d)(7)(B), AFPM's anticipation of Petitioner RNG Coalition's arguments involves a certain degree of speculation.

## I.     Petition for Review Intervention Standard

Under Federal Rule of Appellate Procedure 15(d), a party must move for intervention "within 30 days after the petition for review is filed" and need only provide a "concise statement of the interest … and the grounds for intervention." Fed. R. App. 15(d). Although Rule 15(d) does not provide clear criteria for intervention, Federal Rule of Civil Procedure 24(a) and the "policies underlying intervention" in federal district courts provide guidance. *See Int'l Union U.A.W. v. Scofield,* 382 U.S. 205, 216 n.10 (1965).

A party may intervene as of right pursuant to Federal Rule of Civil Procedure 24(a) if: (1) the intervention motion is timely, (2) the movant has a cognizable interest in the case, (3) the movant's absence from the case will impair its ability to protect its interests, and (4) the existing parties inadequately represent the movant's interests. *See Williams & Humbert, Ltd. v. W&H Trade Marks (Jersey)*, 840 F.2d 72, 74 (D.C. Cir. 1988).

This Court has, at times, stated that Article III standing is a prerequisite to intervention, even by parties seeking to intervene as respondents, *see, e.g.*, *iGas Holdings, Inc. v. EPA*, 146 F.4th 1126, 1135 n.2 (D.C. Cir. 2025), but has also recognized the "tension" between this requirement and Supreme Court precedent holding that standing is not required when a prospective intervenor seeks the same relief as an existing party, *Institutional Shareholder Services, Inc. v. SEC*, 142 F.4th

757, 764 n.3 (D.C. Cir. 2025) (citing, *e.g.*, *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 591 U.S. 657, 674 n.6) (2020)). Nonetheless, this Court has also held that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement." *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003); *accord Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 735 (D.C. Cir. 2003). As discussed below, AFPM satisfies the requirements of Federal Rule of Civil Procedure 24(a) and meets any applicable standing test for intervention. Indeed, as an association whose members are directly regulated by the RFS and the waiver of compliance obligations promulgated by the 2024 Partial Waiver, its standing to intervene is self-evident.

## II.    AFPM Meets the Criteria for Intervention.

AFPM's members are obligated parties who are required to comply with annual cellulosic biofuel RFS standards. They face significant penalties unless they can demonstrate that the requisite amount of cellulosic biofuel has been blended into transportation fuel sold in the United States (by the retirement of RINs) or unless they can comply, wholly or partially, through the purchase of cellulosic biofuel credits for the 2024 compliance year. 40 C.F.R. § 80.1461.

AFPM members would also be harmed if this Court determined EPA erred in waiving 2024 cellulosic biofuel standards and thus obligated parties needed to comply with a cellulosic biofuel standard higher than 0.59% and/or were unable to

comply using cellulosic biofuel credits. Either outcome would produce significant economic harm.

### A.     AFPM's motion is timely.

When evaluating the timeliness of a motion to intervene, this Court will consider the amount of time since the case was filed, the likelihood of prejudice to the existing parties, the purpose for which intervention is sought, and the need for intervention to preserve the proposed intervenor's rights. *See United States v. British Am. Tobacco Australian Servs.*, 437 F.3d 1235, 1238 (D.C. Cir. 2006).

AFPM's motion to intervene is timely. Petitioner RNG Coalition filed a petition for review on September 4, 2025 (Doc. 2133704 (No. 25-1183)). This motion is therefore being filed within the 30-day period for intervention specified in Federal Rule of Appellate Procedure 15(d). *See also* Fed. R. App. P. 26(a).

### B.     AFPM's members have direct and significantly protectable interests in this case which the disposition of the petitions may impair.[4]

This Court has held that a "significantly protectable" interest is required for intervention. *See S. Christian Leadership Conference v. Kelley*, 747 F.2d 777, 779 (D.C. Cir. 1984) (citation omitted). A party seeking to intervene can demonstrate it has a "legally protectable" interest upon a showing that it stands to "gain or lose by the direct legal operation and effect of the judgment." *United States v. Am. Tel. &*

---

[4] The second and third criteria for intervention are related, thus AFPM discusses them together.

*Tel. Co.*, 642 F.2d 1285, 1292 (D.C. Cir. 1980) (citation omitted). Regarding impairment, Federal Rule of Civil Procedure 24(a) only requires that a party seeking intervention be "so situated that disposing of the action *may* as a practical matter impair or impede the movant's ability to protect its interest" (emphasis added). AFPM meets both the interest and impairment requirements.

Courts have consistently held that when objects of governmental regulation are involved, "there is ordinarily little question that the action or inaction has caused [them] injury." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62 (1992); *CropLife Am. v. EPA*, 329 F.3d 876, 884 (D.C. Cir. 2003) (if there is "no doubt" a rule causes injury to a regulated party, standing is "clear"); *Military Toxics Project v. EPA*, 146 F.3d 948, 954 (D.C. Cir. 1998) (a trade association had standing to challenge EPA regulation where some of its members were subject to the regulation). Here, AFPM's members are obligated parties under the RFS, and their compliance obligations for cellulosic biofuel are directly impacted by the 2024 Partial Waiver. Thus, they are the object of the very governmental regulation at issue. *See Am. Fuel & Petrochem. Mfrs. v. EPA*, 3 F.4th 373, 379 (D.C. Cir. 2021) (recognizing AFPM members as producers of petroleum products that would have standing to challenge rule that would benefit competitors, and therefore ruling AFPM had standing).

In cases involving petitions for review of EPA regulations, this Circuit has

consistently granted requests by regulated entities to intervene as respondents. *See, e.g.*, *Energy Future Coal. v. EPA*, No. 14-1123 (Doc. 1508246) (D.C. Cir. Aug. 19, 2014) (order granting AFPM's motion to intervene on EPA's behalf in a challenge to an EPA fuel regulation under CAA Title II); *Sierra Club v. EPA*, No. 13-1112 (Doc. 1436907) (D.C. Cir. May 20, 2013) (order granting trade association's motion to intervene in a petition to review a CAA rulemaking governing Portland cement manufacturing); *Renewable Fuels Ass'n v. EPA*, No. 19-1220 (Doc. 1826369) (D.C. Cir. Jan. 30, 2020) (order granting AFPM and others' intervention with respect to EPA decision on 2018 small refinery exemptions); *RFS Power Coalition v. EPA*, No. 20-1046 (Doc. 1843937) (D.C. Cir. May 22, 2020) (order granting AFPM and others' intervention with respect to the 2020 RFS rule); *Sinclair Wyoming Refin. Co. LLC v. EPA*, No. 22-1074 (Doc. 1962260) (D.C. Cir. Sept. 6, 2022) (order granting AFPM and others' intervention with respect to the 2020-2022 RFS rule).

For these reasons, AFPM members also meet any Article III standing requirement that may apply.[5] *See, e.g.*, *iGas Holdings*, 146 F.4th at 1135 n.2; *but see*

---

[5] Associations such as AFPM have associational standing to litigate on behalf of their members when: (i) their members would have standing to sue individually; (ii) the interests they seek to protect are germane to their purpose; and (iii) "neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). The interests of AFPM's members will be harmed should Petitioner prevail in its challenge to the 2024 Partial Waiver. AFPM members thus would have standing to intervene in their own right. Moreover, the interests AFPM seeks to

*Little Sisters of the Poor*, 591 U.S. at 674 n.6. AFPM members are obligated parties under the RFS. They must demonstrate compliance with the requirements of any rule that sets standards for 2024 and, in this case, that waives part of the cellulosic biofuel standards for that year. Changes to the 2024 Partial Waiver as a result of this litigation, including increases in the annual cellulosic biofuel volume obligations, would directly affect AFPM members and could impose significant additional compliance burdens on AFPM members. *See Roeder*, 333 F.3d at 233 ("[A]ny person who satisfies Rule 24(a) will also meet Article III's standing requirement."); *accord*, *Fund for Animals*, 322 F.3d at 735 (recognizing that the interest requirement under Federal Rule of Civil Procedure 24(a) is met when the proposed intervenor has Article III standing).

Higher standards for cellulosic biofuel in 2024 would require the use of additional cellulosic biofuel RINs for compliance. Obligated parties that lack these RINs will need to purchase additional RINs for compliance. In 2024, cellulosic biofuel RINs were priced at $3.21 to $2.85 on EPA's Moderated Transaction System. *See* https://www.epa.gov/fuels-registration-reporting-and-compliance-help/rin-trades-and-price-information. Even if AFPM members could "carry

---

protect are germane to its purposes, and individual member participation is not required because Petitioner is seeking equitable relief, not money damages. *See United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553-54 (1996).

forward" part of their cellulosic biofuel obligations from 2024 into 2025, the increased RIN obligations would need to be satisfied in the following compliance year.[6] RIN prices for cellulosic biofuel have remained high. Throughout 2025, D3 (cellulosic biofuel) RINs have been priced from $2.31 to $3.14 per RIN. *Id.* Cellulosic biofuel credits also incur costs. For 2024, EPA has set the price of cellulosic waiver credits at $1.61 each. Cellulosic Waiver Credit Price Calculation for 2024, EPA-HQ-OAR-2024-0411-0061.[7] Even where cellulosic biofuel credits are available, additional costs are to be borne by AFPM members because a credit (unlike a cellulosic biofuel RIN) can only be used for compliance with cellulosic biofuel standards and not for both cellulosic biofuel and advanced biofuel standards. 40 C.F.R. § 80.1456(b)(4), (c)(4).

At its core, one cellulosic biofuel RIN or one cellulosic biofuel waiver credit can be used to fulfill one gallon of an obligated party's cellulosic biofuel volume obligation. Thus, if the 80-million-RIN reduction in the applicable volume cellulosic biofuel for 2024 is not upheld, AFPM members would need to comply with the increased volume by purchasing additional cellulosic biofuel credits or acquiring

---

[6] *See* 40 C.F.R. § 80.1407(a)(1) (providing for inclusion of any deficit carryover from a previous year ($D_{CB,i-1}$) into the calculation of an obligated party's renewable fuel obligation for the current year ($RVO_{CB,i}$)).

[7] *Available at* https://www.regulations.gov/document/EPA-HQ-OAR-2024-0411-0061.

additional cellulosic biofuel RINs, which would impose considerable cost. As directly regulated entities with a direct economic stake in the outcome of litigation regarding the 2024 Partial Waiver, AFPM's members' standing is self-evident. Accordingly, the Court should grant AFPM's motion to intervene.

### C.     The interests of AFPM are not adequately represented by any existing party.

To the extent that inadequate representation is a requirement for intervention under Federal Rule of Appellate Procedure 15(d), AFPM easily meets that requirement. The burden of demonstrating inadequate representation "is not onerous," and AFPM "need only show that representation of [its] interest 'may be' inadequate, not that representation will in fact be inadequate." *Dimond v. District of Columbia*, 792 F.2d 179, 192 (D.C. Cir. 1986) (quoting *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 n.10 (1972)).

Here, none of the existing parties can adequately represent AFPM's interests. AFPM expects that Petitioner RNG Coalition may challenge EPA's decision to waive the applicable cellulosic biofuel volumes for 2024. A ruling from this Court increasing these volumes would directly, and negatively, impact AFPM's members. Therefore, Petitioner's interests are directly opposed to those of AFPM.

EPA is not directly regulated by the rule and therefore does not share the same interests as AFPM. As a governmental entity "charged by law with representing the public interest of its citizens," EPA must avoid advancing the "narrower interest" of

14

certain businesses "at the expense of its representation of the general public interest." *Dimond*, 792 F.2d at 192-93; *see also Utahns for Better Transp. v. U.S. Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2002) ("[T]he government's prospective task of protecting not only the interest of the public but also the private interest of the petitioners in intervention is on its face impossible and creates the kind of conflict that satisfies the minimal burden of showing inadequacy of representation." (internal quotation marks and citation omitted)); *County of San Miguel, Colo. v. MacDonald*, 244 F.R.D. 36, 48 (D.D.C. 2007) ("The District of Columbia Circuit has 'often concluded that government entities do not adequately represent the interests of aspiring intervenors.'" (quoting *Fund for Animals*, 322 F.3d at 736)). This makes EPA singularly unsuited to represent the interests of AFPM's members in this litigation.

Even if AFPM's interests and EPA's interests were more closely aligned, "that [would] not necessarily mean that adequacy of representation is ensured." *NRDC v. Costle*, 561 F.2d 904, 912-13 (D.C. Cir. 1977) (concluding that the interests of companies seeking to intervene on EPA's behalf were "concerned primarily with the regulation that affects their industries" and that the companies' "participation in defense of EPA decisions that accord with their interest may also be likely to serve as a vigorous and helpful supplement to EPA's defense"); *see also Trbovich*, 404 U.S. at 538 n.10 (finding a prospective intervenor met his "minimal" burden of

showing possible inadequate representation of his interests by the government even where a statute expressly obligated the Secretary of Labor to serve his interests). Here, the unique perspectives that AFPM brings to this case will supplement, but not replicate, EPA's defense of the 2024 Partial Waiver and provide an invaluable perspective to the Court in resolving this case.

## CONCLUSION

Because AFPM satisfies the requirements for intervention, AFPM respectfully requests that the Court grant AFPM leave to intervene in support of Respondent EPA.

DATED: October 6, 2025

Respectfully submitted,

*/s/ Robert J. Meyers*
Robert J. Meyers
Elizabeth B. Dawson
CROWELL & MORING LLP
1001 Pennsylvania Avenue, NW
Washington, DC  20004-2595
(202) 624-2967
rmeyers@crowell.com

Richard S. Moskowitz
AMERICAN FUEL & PETROCHEMICAL
MANUFACTURERS
1800 M Street, NW
Suite 900 North
Washington, DC  20036
(202) 844-5474
rmoskowitz@afpm.org

*Counsel for Movant-Intervenor*

*American Fuel & Petrochemical Manufacturers*

## <u>CERTIFICATE OF COMPLIANCE</u>

The foregoing motion complies with the type-volume limitation of Fed. R.
App. P. 27(d)(2)(A) because it contains 3,453 words, excluding those parts
exempted by Fed. R. App. P. 32(f).

This motion also complies with the typeface requirements of Fed. R.
App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6)
because it has been prepared in a proportionally spaced typeface using Microsoft
Word in 14-point, Times New Roman font.

*/s/ Robert J. Meyers*
Robert J. Meyers

DATED: October 6, 2025

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I filed the foregoing through the CM/ECF system, which will send a notice of filing to all registered CM/ECF users.

*/s/ Robert J. Meyers*
Robert J. Meyers

Dated: October 6, 2025

**UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

| | |
|---|---|
| COALITION FOR RENEWABLE NATURAL GAS, | ) )  ) |
| *Petitioner*, | ) ) |
| v. | )   No. 25-1183 ) ) |
| UNITED STATES ENVIRONMENTAL PROTECTION AGENCY, | )  ) ) |
| *Respondent*. | )  )  ) |

**RULE 26.1 DISCLOSURE STATEMENT OF**
**AMERICAN FUEL & PETROCHEMICAL MANUFACTURERS**

Pursuant to Rule 26.1 of the Federal Rules of Appellate Procedure and Circuit Rule 26.1, Petitioner American Fuel & Petrochemical Manufacturers ("AFPM") states that it is a national trade association including most U.S. refiners and petrochemical manufacturers. AFPM has no parent companies, and no publicly held company has a 10% or greater ownership interest in AFPM.

AFPM is a "trade association" within the meaning of Circuit Rule 26.1(b). AFPM is a continuing association operating for the purpose of promoting the general commercial, professional, legislative, or other interests of its membership.

Respectfully submitted,

/s/ Robert J. Meyers
Robert J. Meyers
Elizabeth B. Dawson
CROWELL & MORING LLP
1001 Pennsylvania Ave., N.W.
Washington, DC  20004
Telephone: (202) 624-2500
Facsimile: (202) 628-5116


Richard Moskowitz
AMERICAN FUEL & PETROCHEMICAL
MANUFACTURERS
1800 M Street, NW
Suite 900 North
Washington, DC 20036
Telephone: (202) 457-0480
Facsimile: (202) 457-0486

*Counsel for Movant-Intervenor American
Fuel & Petrochemical Manufacturers*


Dated: October 6, 2025